UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JEVON SAWYER,
        Plaintiff,                         Case No. 2:12-CV-00423
                                                     Hon. R. Allan Edgar

v.

CATHERINE BAUMAN,
        Defendant.
_____/

## **OPINION**

Petitioner filed this *pro se* § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights. On December 17, 2009, Petitioner was found guilty by a jury of assault with intent to rob while armed (MICH. COMP. LAWS § 750.89), assault with intent to do great bodily harm less than murder (§ 750.84), carrying a concealed weapon (§ 750.227), and possession of a firearm during the commission of a felony (§ 750.227(b)). Petitioner was sentenced to twenty-five to fifty years for the assault with intent to rob conviction, ten to fifteen years for assault with intent to do great bodily harm, twenty-four to ninety months for carrying a concealed weapon, and two years for possession of a firearm during a felony. Petitioner remains in the custody of the Michigan Department of Corrections.

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising ten claims. Petitioner's appeal was denied in June 23, 2011, and his conviction was affirmed. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied Petitioner's application on November 21, 2011. Petitioner did not appeal to the United States Supreme Court or seek

collateral review before the trial court. Instead, he filed a habeas petition in this Court on November 9, 2012. Docket # 1.

Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

> I. Insufficient evidence of intent and identity of Petitioner as the shooter, in violation of due process.
>
> II. Petitioner's right to a speedy trial was violated.
>
> III. The trial court refused to appoint an expert on eyewitness identification, in violation of due process.
>
> IV. The trial court arbitrarily denied a continuance, in violation of due process and the right to counsel.
>
> V. The admission of irrelevant and racially-charged testimony violated due process.
>
> VI. The jury instructions on flight and aiding and abetting were unsupported by sufficient evidence in violation of due process.[1]

Docket # 1 at 6-7, 9-10, 11(a)-(b); Docket # 2 at 2. After filing his § 2254 claim in this Court, Respondent filed an Answer in opposition to Petitioner's request for a writ of habeas corpus (Docket # 8), to which Petitioner responded. Docket # 28. The matter is now ready for a decision.

I.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures

---

[1] While Petitioner did not raise this claim in his application for writ of habeas corpus, he did raise it in his brief in support of his application. Docket # 2 at 2. Thus, the Court will review this claim as well.

state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply.  *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly.  *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable").  This Court defers to state court decisions when the state court addressed the merits of petitioner's

claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

II.

Petitioner argues that this Court should grant him a new trial based on several violations of his due process rights and right to counsel. This Court reviews all of Petitioner's claims individually.

### A. Claim I: Insufficient Evidence

Petitioner first claims that his due process rights were violated because there was insufficient evidence to support the convictions for assault with intent to rob and do great bodily harm. Specifically, he contends that the evidence did not show that he was the shooter or that he intended to shoot the gun. Docket # 2 at 18-20.

A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)). In a habeas proceeding, however, the court cannot simply conduct a de novo review of the state

court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA. Petitioner can be granted habeas relief only if the Michigan Court of Appeals unreasonably applied the *Jackson* standard. *See Getsy v. Mitchell,* 495 F.3d 295, 315-16 (6th Cir. 2007) (en banc) (whether the petitioner is entitled to habeas relief ultimately depends on whether the state court's denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.). The court's task is "to determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential element of the crimes charged beyond a reasonable doubt. *See Nash v. Eberlin,* 258 Fed. App'x 761, 765 (6th Cir. 2007).

When reviewing whether the state court's determination was "objectively unreasonable," the court must engage in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson.* The inquiry ends if it is determined that there was sufficient evidence to convict Petitioner. If the court finds that the evidence is insufficient to convict, it must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *Id.* The law therefore "commands deference at two levels." *Tucker,* 541 F.3d at 656.

The Michigan Court of Appeals considered Petitioner's sufficiency-of-the-evidence claim, and subsequently denied it without unreasonably applying the *Jackson* standard:

> Defendant first presents a challenge to the sufficiency of his assault convictions and also argues that his motion for a directed verdict should have been granted in this context. "A challenge to the trial

court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence." *People v Lewis (On Remand)*, 287 Mich App 356, 365; 788 NW2d 461 (2010); however, we consider all of the evidence adduced up to the time of the motion. *People v Allay*, 171 Mich App 602, 605; 430 NW2d 794 (1988). Thus, we review this claim de novo, viewing the evidence in the light most favorable to the prosecution, to determine if the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).

The offense of assault with intent to rob while armed has the following elements: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003). The offense of assault with intent to do great bodily harm less than murder has the following elements: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). Identity is also an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Viewing the evidence in the light most favorable to the prosecution up until defendant's motion, there was ample evidence to sustain both of defendant's assault convictions. At trial, the victim, David Pirkola, testified that defendant pointed the handgun at Pirkola's face while demanding money. Pirkola's testimony establishes all of the elements of both offenses. It is axiomatic that pointing a handgun at another individual establishes assault under either statute. MCL 750.84; MCL 750.89. See also *People v Abraham*, 234 Mich App 640, 657; 599 NW2d 736 (1999). Codefendant James Thompson's testimony established that defendant planned a robbery, was a participant thereto, and was the shooter. Defendant's fingerprints were also collected from the door to Pirkola's comic book store. Further, testimonial evidence from other witnesses demonstrated that defendant had access to the type of handgun used in the instant offenses and that he was in close proximity to the comic book store before the offenses occurred. Defendant also fled following the incident at issue and was arrested several months later in another jurisdiction. *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001). We will not interfere with a jury's role in determining the weight of the evidence or the credibility of witnesses. *People v.*

*Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

On appeal, defendant essentially complains that there was insufficient evidence that Pirkola was a victim of an assault, namely that Pirkola's lack of fear and his counterattack on defendant with a phonebook demonstrated that the gun discharged accidentally. Further, defendant claims that there was insufficient evidence of defendant's identity. Defendant's arguments lack merit. First, "the subjective element of fear has no place in a criminal assault trial apart from an inferential determination of whether a rational person in the victim's shoes would have reasonably believed that the defendant's behavior threatened an immediate battery." *People v Davis*, 277 Mich App 676, 685-686; 747 NW2d 555 (2008), vacated in part on other grounds 482 Mich 978 (2008). The testimony of Pirkola and Thompson established that defendant's conduct would place another reasonable apprehension of receiving an immediate battery. *People v Reeves*, 458 Mich 236, 244; 580 NW2d 433 (1998). While Pirkola expressed some uncertainty at trial due to the passage of time regarding defendant's identity; he, nonetheless, identified defendant from a photographic lineup, a live lineup, at the preliminary examination, and at trial. See *People v Edwards*, 55 Mich App 256, 259-260; 222 NW2d 203 (1974). Notably, Thompson also identified defendant as the gunman. On this record, we conclude that there was sufficient evidence to affirm defendant's convictions and the trial court's ruling that denied defendant's motion for directed verdict. *McGhee*, 268 Mich App at 622.

In reaching this conclusion, we note that defendant premised his arguments on the basis that the testimony of the witnesses for the prosecution was not credible. Essentially, this presents a great weight of the evidence argument, but this issue is not preserved because defendant failed to move for a new trial. MCR 2.611(A)(1)(e); *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). We, nonetheless, find defendant's arguments to be lacking in merit. "Criminal cases are usually fought on the battlefield of witness credibility." *People v Lemmon*, 456 Mich 625, 643 n 22; 576 NW2d 129 (1998). Defendant failed to carry the burden of demonstrating that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. MCR 2.611(A)(1)(e); *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

Docket # 25 at 1-2. The Michigan Court of Appeals throughly analyzed Petitioner's claim, and

reasonably applied federal law to the facts of Petitioner's case.  Because Petitioner has not provided new evidence or arguments to support his sufficiency-of-the-evidence claim, this Court affirms the findings of the appellate court and denies Petitioner's claim.

### B.  Claim II: Speedy Trial

Petitioner claims that his constitutional right to a speedy trial was violated. Docket # 2 at 21.  Petitioner asserts that he requested a speedy trial three times during the pendency of his case, and each time his requests were rejected.  Docket # 2 at 23-24.  The speedy trial guarantee of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  Four factors must be balanced to determine whether a delay is unconstitutional: length of delay, reason for the delay, criminal defendant's assertion of the right to a speedy trial, and prejudice resulting from the delay.  *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999); *United States v. Smith*, 94 F.3d 204, 207 (6th Cir. 1996) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  One of these factors, alone, is insufficient to show a violation of the Sixth Amendment; rather, the factors must be considered together under the circumstances.  *See Barker*, 407 U.S. at 533.

The Michigan Court of Appeals applied the abovementioned standard in reviewing Petitioner's speedy trial claim:

> Next, defendant alleges that the trial court denied his constitutional and statutory right to a speedy trial.  Whether a defendant has been denied his right to a speedy trial is a mixed question of fact and law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). In determining whether a defendant has been denied his right to a speedy trial, a court must consider: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006).

> In this case, 313 days passed between the date of defendant's arrest and the commencement of the trial. Because the delay was less than 18 months, defendant must prove prejudice, *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003), something he has failed to do. A defendant may experience two types of prejudice: (1) prejudice to his person, and (2) prejudice to the defense. *Williams*, 475 Mich at 264. Personal prejudice might include incarceration or mental anxiety. *Id.* Defendant claims that he suffered with mental health issues while incarcerated, but there is no record support for his claims. Prejudice to the defense is the more serious concern. *Id.* The record does not reflect that defendant's defense suffered as a consequence. Defendant asserts that "valuable witnesses" were lost due to the lengthy delay of his trial, but does not identify any such witnesses or proffer any proposed testimony by these witnesses, other than a general statement that these witnesses "would have testified that I engaged in no criminal activity as charged." There was no evidence that any witnesses were unable to testify due to the delay, or that any evidence was lost. Even in cases where the delay was presumed to be prejudicial to a defendant, there was no speedy trial violation where the defendant failed to prove prejudice resulting from the delay. *Id.* (19 months); *Gilmore*, 222 Mich App at 462 (18 months). Defendant's failure to prove prejudice resulting form the delay precludes relief.

Docket # 25 at 3. The appellate court appropriately applied federal law to the facts of Petitioner's case. Under the first factor, Petitioner had not shown that the time between his arrest and his trial "crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Dogget v. United States*, 505 U.S. 647, 651-52 (1992) (noting delay is not shown if the prosecutor has acted within customary promptness). Courts have generally found delays of more than one year to be "presumptively prejudicial." *Doggett*, 505 U.S. 652 n. 1; *see, e.g., Barker*, 407 U.S. at 533 (noting over five years was an extraordinary delay) . As the Michigan Court of Appeals recorded, 313 days had passed from the time of Petitioner's arrest to his trial. Seeing as this is less than one year, Petitioner has not shown that the delay had become presumptively prejudicial.

Moreover, even if Petitioner had shown prejudice, he has not shown that the reasons for the delay were of no fault of his own. *Doggett*, 505 U.S. at 652; *Smith*, 94 F.3d at 209. Even the trial judge noted in one of Petitioner's hearings how odd it was that Petitioner kept requesting a speedy trial, but simultaneously would file motions resulting in further delays of his trial. Docket # 14 at 2 ("[H]e's crying for a speedy trial and then creates circumstances that prolong the case because of his conduct.").

Regarding the third speedy trial factor, neither party disputes that Petitioner timely filed his request for a speedy trial. Finally, Petitioner has not shown that his case suffered prejudice due to the 313 day delay. Petitioner does assert that he "was prejudiced by the delay because he suffered the anxieties and hardships of pretrial loss of liberty recognized in Barker, 532-33." Docket # 2 at 26. However, the Michigan Court of Appeals appropriately denied this argument and further noted that Petitioner failed to show any prejudice to his defense. Thus, Petitioner's claim that his right to a speedy trial was violated is denied.

### C. Claim III: Eyewitness Identification Expert

Petitioner next claims that he was denied his right to due process when the trial judge denied his request for an expert in eyewitness identification. Docket # 2 at 29. "Because there is no clearly established Supreme Court law which requires the appointment of an expert in eyewitness identification, the trial court's failure to do so would not entitled petitioner to habeas relief." *Spencer v. Hofbauer*, No. 2:06-12133, 2008 WL 324098, at *9 (E.D. Mich. Feb. 6, 2008). The Michigan Court of Appeals considered this claim and subsequently denied it:

> Next, defendant argues that the trial court erroneously denied his request to retain an eyewitness-identification expert at public expense. We review for an abuse of discretion. *People v Tanner*, 469

Mich 437, 442; 671 NW2d 728 (2003). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert. *Tanner*, 469 Mich at 443. Defendant presented very little to support his request other than general references to *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), overruled on other grounds *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004), regarding the unreliability of eyewitness identifications; an article in the *Grand Rapids Press*; and defense counsel's representations that the specified expert was the leading authority in eyewitness identifications, even though he is no longer testifying in cases.

Michigan courts have not established a per se rule excluding expert testimony on eyewitness identification; however, the admission of expert testimony is subject to MRE 702. Under MRE 702, the trial court must "ensure that any expert testimony admitted at trial is reliable." *Gilbert v Daimler Chrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). In this case, the trial court properly refused to appoint an expert for defendant at public expense. Given the dearth of information presented in support of defendant's motion, the trial court could not perform "a searching inquiry" to establish whether such testimony would even be admissible. *Id.* The case relied on by defendant is also factually distinguishable, and the *Grand Rapids Press* has no precedential value whatsoever. Defendant has demonstrated, at most, "a mere possibility of assistance from the requested expert," and even that is insufficient to warrant an expert witness. *Tanner*, 469 Mich at 443. Defendant ultimately failed to carry his burden to persuade the trial court that the purported eyewitness identification experts had specialized knowledge that would aid the factfinder in understanding the evidence or determining a fact in issue. *People v Smith*, 425 Mich 98, 112; 387 NW2d 814 (1986). Moreover, a fundamentally unfair trial did not result, where defendant was able to present his attack on the victim's identification through cross-examination and argument. See generally *People v Leonard*, 224 Mich App 569, 582-583; 569 NW2d 663 (1997). The trial court did not abuse its discretion in denying defendant's motion, as it fell within the range of reasonable and principled outcomes. *Babcock*, 469 Mich at 269.

Docket # 25 at 3 (footnotes omitted). In addition to the reasons set forth by the Michigan Court of Appeals, this Court notes that Petitioner has not shown how his defense was prejudiced by the trial court's failure to appoint an eyewitness identification expert. Based on the record, the appellate court noted that Petitioner's "defense counsel provided a highly competent trial defense including excellent opening and closing statements and effective cross-examinations of witnesses." Docket # 25 at 6. Based on this information, Petitioner's claim that he was unable to further his defense when he was wrongly denied an expert in eyewitness identification fails.

### D. Claim IV: Denial of a Continuance

Next, Petitioner argues that the trial court's failure to grant a continuance after Petitioner was provided a new trial attorney deprived him of his rights to due process and counsel. Respondent contends that Petitioner's claim is not exhausted. Docket # 8 at 35. On appeal, Petitioner argued that the trial court abused its discretion in denying his counsel's motion for a continuance. Docket # 25 at 42. In so arguing, Petitioner referenced only state law, and made no mention of a Sixth Amendment right to counsel or a violation of his due process rights. While Petitioner did not label his claims as federal constitutional violations, he made the same arguments then as he does now before this Court. "[T]o state a federal due process claim[,] it is not necessary to invoke 'the talismanic phrase "due process of law"' or cite 'book and verse on the federal constitution;' petitioner need only make 'essentially the same arguments' before the state and federal courts to exhaust a claim." *Duncan v. Henry*, 513 U.S. 364, 370 n.1 (1995) (noting the substance of the federal claim is what must be presented to the state court to exhaust). Therefore, Petitioner exhausted this claim.

Nonetheless, Petitioner's claim fails on the merits. Regarding Petitioner's claim

that the denied continuance resulted in ineffective assistance of trial counsel fails because, "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial[;] the fact, standing alone, that a continuance had been denied, does not constitute a denial of the constitutional right to assistance of counsel." *Avery v. State of Alabama*, 308 U.S. 444, 446 (1940). "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slapp*, 461 U.S. 1, 11 (1983). Broad discretion is granted to the trial courts when determining matters of a continuance, and "only an unreason[able] and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (noting that trial judges must schedule trials so that witnesses, lawyers, and jurors are all in the same place at the same time)). Moreover, as previously mentioned, the Michigan Court of Appeals noted in its decision that Petitioner's counsel was highly competent despite the denied continuance. Docket # 25 at 6. Thus, the first part of his claim that the denial of a continuance resulted in ineffective assistance of counsel fails.

Next, Petitioner claims that his defense was prejudiced based on the denied continuance. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589. In evaluating potential prejudice resulting from the denied continuance, the Michigan Court of Appeals determined Petitioner's defense was not prejudiced

when the trial court denied his request for a continuance:

> Defendant next contends that the trial court erroneously denied his motion to adjourn the trial. We review for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). In denying defendant's motion, the trial court failed to follow the proper standard, where it essentially assessed defense counsel's lawyering skills. A defendant must show good cause and diligence in requesting a motion for adjournment. *Id.* A good cause determination may be based on the following factors: "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id.* at 18.
>
> In this case, defendant meets the first two prongs set forth above, where he was asserting his constitutional right to present a defense, and had a legitimate reasons for doing so. US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20; *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579(2006). In addition, we find no evidence to conclude that defendant was negligent in pursuing the adjournment. Although defense counsel was appointed on October 15, 2009, he informed the trial court that he did not find out he had been appointed until a week after the order was entered and that it was the second week of November before he received the discovery, and that he filed his motion for adjournment as soon as he realized that it was not "a routine criminal case." Trial counsel bluntly informed the trial court, "You can order me to try the case and that's fine, and I'll do it. You can order me to do it, but I'm not ready to go to trial." Finally, although this was defendant's third trial attorney, he had not previously requested an adjournment. Accordingly, we conclude that defendant had shown good cause and diligence and was entitled to a continuance.
>
> Nevertheless, a trial court's denial of a motion for adjournment will not be reversed "unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Coy*, 258 Mich App at 18-19. On appeal, defendant claims that he was prejudiced because defense counsel did not have adequate time to review his case file, interview witnesses, or develop briefs in support of his motions to admit the results from gunshot residue tests and to request the eyewitness-identification expert. The former claims cannot be substantiated on this record. With respect to the latter claims, the trial court properly excluded the results from the primarily gunshot residue test and

> correctly denied defendant's request to hire the eyewitness-identification expert. We further note that, based on the record, defense counsel provided a highly competent trial defense including excellent opening and closing statements and effective cross-examinations of witnesses. We find nothing in his performance that suggests a more effective defense could have been presented with additional time and defendant does not point out any specific aspects of trial strategy that would have differed with additional time. Accordingly, even though we conclude that the trial court abused its discretion in failing to grant a continuance, we find that there was no prejudice suffered by defendant based on that error, such that reversal is unnecessary. *Id.*

Docket # 25 at 6. As the Michigan Court of Appeals noted, Petitioner's defense was not prejudiced by the trial court's failure to grant his request for a continuance. Moreover, one reason Petitioner wanted a continuance was so that his counsel could develop a defense to the prosecutor's theory that Petitioner had fled town before being arrested. Docket # 2 at 39 (noting Petitioner referenced tax forms and a customer profile as evidentiary items able to support his non-fleeing defense). However, even if Petitioner had been provided a continuance, the two documents he believes could support his non-flight defense do not demonstrate that Petitioner did not flee before being arrested. Because the appellate court has not unreasonably applied federal law to the facts of Petitioner's case, this Court also denies Petitioner's claim that his defense was prejudiced due to a denied continuance.

### E. Claim V: Admission of Irrelevant and Racially Charged Testimony

In Petitioner's fifth claim, he asserts that irrelevant and prejudicial testimony were improperly admitted, which denied him a fair trial and violated his due process rights. Docket # 2 at 41. Respondent asserts that Petitioner has not exhausted this claim. Docket # 8 at 40. Much like the previous claim, Petitioner raised this claim as a state law claim rather than a

constitutional claim, however the substance of his argument substantiates a federal due process claim sufficient to have exhausted this claim. *Duncan*, 513 U.S. at 370 n.1; *see* Docket # 25 at 27.

Notably, however, while Petitioner attempts to make this claim a federal due process issue, it is a state law evidentiary issue, which is not cognizable on habeas review. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 124 S. Ct. 345 (2003). "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted). It follows then that this claim is not cognizable on habeas review.

Even if this claim were cognizable on habeas review, the Michigan Court of

Appeals properly considered and denied this claim:

> Next, defendant claims that the trial court erroneously denied his motion in limine to exclude trial testimony of five witnesses for the prosecution. We note that two of the witnesses did not testify in this case and that the three witnesses who did provided very little trial testimony. This testimony was, however, relevant and admissible. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Much of this case turned on linking pieces of circumstantial evidence together. The testimony of the three testifying witnesses was relevant because it essentially corroborated Thompson's version of events. A witness's credibility is always a material issue. *People v Layher*, 238 Mich App 573, 580; 607 MW2d 91 (1999). The challenged testimony, along with Thompson's testimony, was relevant to place defendant in the general vicinity of the crime scene approximately 50 minutes before the shooting occurred. Contrary to defendant's assertion on appeal and below, the challenged testimony helps the jury resolve the question whether defendant was involved in the robbery. Moreover, prosecutors and defendants must be able to give the jury an intelligible presentation of the full context in which events at issue took place. *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996).

Docket # 25 at 4-5. The Michigan Court of Appeals determined the testimony of the three witnesses was relevant to Petitioner's case. Therefore, this Court defers to the state court's conclusion and holds that Petitioner's claim that the testimony of three witnesses prejudiced his defense in violation of his due process rights fails. *See Lisenba v. People of State of California*, 314 U.S. 219, 228 (1941) (noting the federal courts do not review a trial judge's decision to admit evidence).

### F. Claim VI: Jury Instructions

Finally, Petitioner claims that the jury instructions pertaining to flight and aiding and abetting were unsupported by sufficient evidence, thereby violating his due process rights.

Docket # 2 at 46. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); s*ee also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569-70 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

The Michigan Court of Appeals concluded that there was sufficient evidence for the flight and aiding and abetting jury instructions when it denied Petitioner's claim on appeal:

> Next, defendant complains that the trial court issued two erroneous instructions to the jury. We review de novo claims of instructional error. *People v Hernandez-Garcia*, 266 Mich App 416, 417; 701 NW2d 191 (2005), vacated in part on other grounds 477 Mich 1039 (2007). As such, we "examine[] the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006).
>
> "Flight can result from factors other than guilt, and it is for the jury to determine what caused defendant to flee." *People v Taylor*, 195 Mich App 57, 63; 489 NW2d 99 (1992). The record provides that defendant fled from the scene of the crime and that he was in the company of his codefendants until 7:30 p.m. However, when the codefendants were later apprehended, defendant was not with them. The police received information that led to a nation-wide manhunt, after which, defendant was apprehended in another jurisdiction several months later. Defendant's actions meet our definition of flight. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Importantly, the trial court properly instructed the jury on how to evaluate this evidence in accordance with CJI 4.4, which we cited with approval in *Taylor*, 195 Mich App at 63-64. The

> challenged jury instruction had evidentiary support, *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988), and the trial court's flight instruction adequately presented the issue to be tried and protected the defendant's rights. *Martin*, 271 Mich App at 337-338.
>
> Defendant also asserts that it was error to give the jury an aiding and abetting instruction. To establish guilt under an aiding and abetting theory, the prosecutor must prove [the] following elements: (1) the crime charged was committed by the defendant or someone else, (2) the defendant performed acts or provided encouragement that assisted with the commission of the crime, and (3) the defendant intended the commission fo the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999). An aiding and abetting instruction is appropriate, "where there is evidence that (1) more than one person was involved in committing a crime, and (2) the defendant's role in the crime may have been less than direct participation in the wrongdoing." *People v Bartlett*, 231 Mich App 139, 157; 585 NW2d 341 (1998). In this case, there was more than one person involved in committing a crime, and even if defendant was not the shooter, there is evidence that he helped plan the robbery, and a reasonable inference existed that he supplied the shooter with the .380-caliber handgun. *Id.* Thus, the challenged jury instruction had evidentiary support contrary to defendant's claim. *Johnson*, 171 Mich App at 804. The trial court provided a suitable aiding and abetting instruction for the jury. *Martin*, 271 Mich App at 337-338.

Docket # 25 at 7. The Michigan Court of Appeals thoroughly analyzed Petitioner's claim and evaluated the evidence on record. Petitioner has not demonstrated that the two jury instructions so infused the trial with unfairness as to violate his due process rights. He merely states that there was not sufficient evidence to support the instructions. Docket # 2 at 46-53. As such, Petitioner's jury instruction claim is denied.

### III.

This Court concludes that all of Petitioner's claims are without merit. Should Petitioner choose to appeal this action, the Court must determine whether a certificate of

appealability may be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, this Court denies a certificate of appealability as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's motion for post-conviction relief (Docket # 1) pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**. A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED**.

__/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

Dated: 9/9/2015